```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MARY L. JOHNSON,
                          Plaintiff,
                                                    07-CV-0322C
v.                                              **DECISION**
                                                **and ORDER**
MICHAEL ASTRUE,
Commissioner of Social Security,

                          Defendant.
_____
```

## **INTRODUCTION**

Plaintiff, Mary L. Johnson("Johnson") filed this action pursuant to the Social Security Act ("SSA"), codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On January 28, 2008, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on February 18, 2008, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

## **BACKGROUND**

Plaintiff is a 54 year old woman with a high school education. (Tr. 159) She alleges that she has been disabled since August 5,

2003 because of back pain, knee pain, fibromyalgia and lupus. On September 9, 2004, Johnson filed an application for Disability and SSI. (Tr. 52-54) Her application was denied initially on December 23, 2004. (Tr. 48-50) Plaintiff requested a hearing which was held on August 8, 2006 at which plaintiff appeared before an Administrative Law Judge ( ALJ ) and was represented by counsel. (Tr. 331-355) By decision dated September 18, 2006, the ALJ found Johnson was not disabled within the meaning of the SSA. (Tr. 17-29) Plaintiff requested review by the Appeals Council. The decision of the ALJ became final when the Appeals Council denied review on April 9, 2007.(Tr. 4-6) Plaintiff commenced this action on May 17, 2007 claiming that she was disabled because of degenerative disc disease of the lumbar spine, myofascial pain, obesity, headaches, and adjustment disorder.

### A. **Medical Background**

In July, of 1998, Johnson began experiencing chills, headaches, and fatigue. (Tr. 344) Dr. Vinay Reddy, a Rheumatologist, diagnosed plaintiff with fibromyalgia towards the end of 1998. (Tr. 345) Plaintiff sustained a back injury on February 21, 2003 while working for General Mills. She lifted a pallet and felt a pull in her lower back. She was diagnosed with lumbar strain on March 11, 2003. (Tr. 114) Johnson continued to work until August, 2003 when she found she was too fatigued to continue. (Tr. 347) Johnson was examined by Dr. Reddy on April 1, 2003. (Tr. 111) Plaintiff's myofascial pain was improved but she

had pulled her back. Dr. Reddy refilled plaintiff's prescription for Plaquenil. An MRI conducted on May 29, 2003 found a small left paracentral disc herniation slightly indenting the thecal sac at L2-3. (Tr. 222)

Plaintiff sought treatment with Dr. Frank Colarusso, an orthopaedic doctor, on August 13, 2003. (Tr. 142) Dr. Colarusso noted plaintiff's history of Fibromyalgia and osteoarthritis. Johnson presented with a normal physical examination but she experienced back pain with slump and straight leg raises. (Tr. 142) Dr. Colarusso noted a lumbar spine rotational dysfunction at the L4-5 level and a right on right sacral torsional dysfunction. Dr. Colarusso noted that the MRI imaging showed L2-3 left parcentral disc herniation with slight indentation of the thecal sac. He treated plaintiff with manual medicine treatments and referred plaintiff for an epidural steroid injection. (Tr. 143) Dr. Colarusso opined that plaintiff was temporarily totally disabled. He continued to treat plaintiff on a monthly basis. (Tr. 118-142) In November, 2003, the epidural injections were discontinued as they were apparently not effective. (Tr. 135)

In a letter dated May 26, 2004, Dr. Colarusso summarized Johnson's care since he was moving out of state and was referring her care back to her primary care physician, Dr. Thomas Scanlon. (Tr. 116-117) Dr. Colarusso noted that plaintiff found some relief with osteopathic manual medicine treatments, he recommended plaintiff be referred to a physiatrist or pain management

specialist. He found plaintiff to be temporarily totally disabled and limited in performing physical demanding work. He further limited her to not do prolonged repetitive or heavy lifting, carrying, bending, twisting, standing, walking with more than ten pounds or more than one half hour at a time. (Tr. 117)

On October 9, 2003, plaintiff was examined by Dr. Kyu Ha Lee for an independent medical examination. (Tr. 114) Dr. Lee found plaintiff's range of motion to be within normal limits and found no sensory or motor abnormalities in the lower extremities. Dr. Lee concluded that plaintiff suffered a strain or sprain of the low back and has left HNP at L2-3 pursuant to the MRI conducted on April 25, 2003. However, Dr. Lee did not believe there was any neurological deficit in the lower extremities. Noting that plaintiff did not believe epidural steroid injections helped her pain, Dr. Lee did not recommend continuing the injections. (Tr. 115) Instead, he opined that her condition would improve with weight loss and physical therapy and found Johnson to have a temporary mild partial disability. (Tr. 115) He found that she could work with the restriction of no lifting over 20 pounds for the next eight weeks and thereafter, she could work without restriction. (Tr. 115)

On November 6, 2003, Dr. Danilo Saldaña, a rheumatologist, took over treatment of plaintiff from Dr. Reddy. (Tr. 167) He noted plaintiff's medical history included fibromyalgia, herniated disc and undifferentiated connective tissue disease. (Tr. 167)

Dr. Caldaña found plaintiff to have undifferentiated connective tissue disease, polyarthralgia, low back pain and fatigue. He recommended continuation of Plaquenil and Vioxx. (Tr. 168) Follow up appointments in November, 2003 and January, 2004 confirmed the diagnosis of undifferentiated connective tissue disease, low back pain and fatigue with continued prescriptions for Vioxx and Plaquenil. (Tr. 163-166)

Dr. Saldaña continued to treat Johnson throughout 2004, adjusting her medications and starting plaintiff on Mobic. (Tr. 252-258) Images taken of Johnson's left and right knees on January 24, 2004 showed early osteoarthritis of the knees, normal appearance on AP standing view. (Tr. 169)

Johnson sought treatment at Gosy and Associates, Pain Treatment Center on June 14, 2004 with the complaint that she had fibromyalgia. (Tr. 155) Plaintiff claimed that her symptoms had begun five years earlier during a time of stress. She experienced pain in the left flank region and spread to the spinal area, shoulders and thighs. Dr. Eugene Gosy diagnosed plaintiff with diffuse pain due to fibromyalgia, migraine headaches, lumbar area discomfort and clinical depression. (Tr. 157) He prescribed Zoloft and Baclofen as well as stretching and strengthening exercises. (Tr. 157)

A physician's assistant in Dr. Gosy's office examined plaintiff on July 20, 2004 at which time plaintiff described pain along the spinal axis which spread into her shoulders and thighs.

Dr. Gosy adjusted plaintiff's medications, discontinuing Baclofen and increasing Zoloft and commencing Skelaxin for muscle pain. (Tr. 153-154)  Johnson was again treated in this office in September, 2004 when she complained of two to four migraine headaches each month.  Plaintiff was treated with Lidoderm patches and Fioricet and the Skelaxin was discontinued.  Plaintiff was referred to VESID for vocational retraining. (Tr. 151)

Plaintiff was treated by Dr. Sobhana Narayanan of the Department of Rehabilitative Medicine with the University of Buffalo from June 30, 2004 through November 3, 2004. (Tr. 184-192) Dr. Narayanan assessed plaintiff to have low back pain, left L2-3 disc herniation and myofascial pain syndrome and found her to be temporarily totally disabled limited in doing physically demanding work. (Tr. 191) He advised her to continue her current pain medications, Vioxx and Lortab, and limited her from prolonged lifting, carrying, bending, and twisting activities. (Tr. 189)  On December 1, 2004, Dr. Narayanan noted that plaintiff's pain was nearly controlled  with Mobic and that she should continue on Lortab and Mobic. (Tr. 223)

An independent psychiatric evaluation by Dr. Thomas Ryan on December 4, 2004 found plaintiff to be depressed with a fair prognosis.  He opined that her condition was a reaction to her physical difficulties and that she would be capable of managing money.  (Tr. 195-196)   A second psychiatric evaluation on

December 9, 2004 by Dr. Samuel Balderman also found plaintiff to suffer from depression. (Tr. 197-200)

Plaintiff was examined on September 27, 2004 by Dr. Owen Young as an independent medical examination. (Tr. 158-161) Plaintiff reported that she experienced low back pain daily and that the symptoms vary in intensity. She had pain extending into the buttock and legs. Johnson was taking Baclofen as a muscle relaxant and Lortab as well as Vioxx and Plaquenil. (Tr. 158) Dr. Young diagnosed plaintiff with lumbosacral strain and equivocal disc pathology at L2-3 as well as obesity. (Tr. 160) He concluded that plaintiff has a partial, mild to moderate disability. (Tr. 160) He questioned whether plaintiff gave either the physical therapy or chiropractic treatment sufficient time for effect. (Tr. 160)

A physical Residual Functional Capacity Assessment conducted on December 23, 2004 found that plaintiff could lift occasionally ten pounds, frequently less than ten pounds, stand or walk at least two hours and sit about six hours. (Tr. 202-221) Further, plaintiff's depression was found to not be severe. (Tr. 208)

Dr. Narayanan examined plaintiff on January 5, 2005 at which time plaintiff stated that she had not taken her anti-inflammatory drugs for a while and that Mobic was not working. Dr. Scanlon had started plaintiff on Celebrex. (Tr. 272) One month prior on December 1, 2004, Dr. Narayanan's notes indicate that plaintiff's pain was nearly controlled with Mobic. (Tr. 274)

Dr. Owen Young performed a follow-up independent orthopedic examination of plaintiff on May 5, 2005. (Tr. 296-298) Johnson identified belt-level pain extending downward with buttock and leg pain extending to her knees. Plaintiff was taking Hydrocodone, Motrin and Zoloft. (Tr. 296) Dr. Young noted that plaintiff anteriorflexed 30 degrees, tilted only ten degrees and extended only five degrees. He pointed out that true muscle spasm was not felt and voluntary restriction was present. (Tr. 297) When reclining, plaintiff would not allow elevation above five degrees which, in Dr. Young's opinion, was grossly inconsistent with leg leverage tests sitting that were carried from 90 degrees to zero degrees without a compensatory slouch. (Tr. 297) Dr. Young concluded that plaintiff exhibited overresponse and symptom magnification and that plaintiff's overall disability was partial in nature and mild in degree. (Tr. 297)

Images taken of plaintiff's knees on June 14, 2005 showed tricompartmental bilateral osteoarthritis knees. (Tr. 264) The radiographs showed mild to moderate narrowing of the medial and lateral joint compartments.

Johnson was treated by Dr. Keith Stube for knee pain in March, 2006, who reported that plaintiff had no effusion of either knee and had stable ligaments. (Tr. 276) While he noted some degenerative changes in plaintiff's lateral compartments, the joint spaces were well maintained. Dr. Stube opined that plaintiff may have some early patella femoral arthritis and injected the knee

with Kenalog and Lidocaine. He also started plaintiff on a therapy program. (Tr. 276)

Plaintiff continued treatment with a practitioner with Gosy and Associates throughout 2005 and 2006 for migraines, depression and myofacial pain syndrome. (Tr. 278-291, 300-321) On January 10, 2006, plaintiff's treating practitioner noted that although Johnson suffered exacerbation of fibromyalgia at the time of her back injury, there was no permanent disability resulting from this injury. (Tr. 303)

### B. Non-Medical Background

Plaintiff worked for General Mills from July of 1974 through August, 2004 as a machine operator in the packaging department. (Tr. 342) Johnson lived with her husband in an apartment along with two dogs. (Tr. 340) Johnson has one son and three grandchildren who live out of state and that she sees two times a year. (Tr. 339) Plaintiff, has her own car, drives and traveled by airplane in July 2005. (Tr. 339, 354)

Plaintiff testified that she had radiating pain from the herniated disk that radiated down her legs. (Tr. 348) In addition to this back pain, she also testified she suffered from pain of fibromyalgia which to her felt as if she had the flu, feeling totally fatigued. (Tr. 348-349) Finally, Johnson also testified that she had pain from arthritis in the knees.

Daily activities for Johnson included minimal cooking such as boiling water and putting dishes in the dishwasher. (Tr. 349-350)

Plaintiff claimed that she did not do any physical activity. If she had to see a doctor, it may exhaust her for the day. (Tr. 350) Plaintiff might take a nap for one to three hours a day.

Plaintiff owned and drove a car. (Tr. 351) When asked if she could walk a block, plaintiff testified that she could do that and other physical things but that there would be consequences to her. (Tr. 351) Johnson claimed that she could not work on any kind of sustained and predictable basis. (Tr. 352)

### **DISCUSSION**

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the

claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a severe impairment which significantly limits her ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform her past work.  If she is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure.  In her decision dated September 18, 2006, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date of August 5, 2003; (2) suffered from degenerative disc disease of the lumbar spine, myofascial pain and obesity; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) did not have the residual functional capacity to perform her past relevant work as a machine operator; and (5) did have the residual functional

capacity to do sedentary work as well as five separate light occupations. (Tr. 20-29)

Plaintiff alleges that the ALJ did not have substantial evidence to support her finding that plaintiff was not disabled. She contends that the ALJ failed to properly credit plaintiff's credibility regarding her symptoms and resulting limitations. I find that there is substantial evidence in the record which supports the ALJ decision.

First, plaintiff contends that because plaintiff had a good work history consisting of 28 years working for the same company, she was entitled to substantial credibility in support of her claim that she was no longer able to work. Next, plaintiff contends that her subjective complaints are supported by objective medical evidence and as such are entitled to great weight. Therefore, plaintiff argues that if plaintiff's testimony were properly credited, the ALJ should have come to a different conclusion regarding plaintiff's residual functional capacity and elicited the testimony of a vocational expert to assess plaintiff's ability to perform other work at step five of the sequential evaluation process.

The ALJ concluded that Johnson had the residual functional capacity to stand/walk about six hours in an eight hour day, sit intermittently for the remaining two hours, while doing routine one to two step tasks. (Tr. 26) In making this determination, the ALJ properly relied upon the medical evidence in the record.

Specifically, Dr. Lee opined in October, 2003 that plaintiff could not lift over twenty pounds for eight weeks but thereafter could lift without restriction. (Tr. 115) In addition, the ALJ noted that Dr. Colarusso's assessment made in December 2003 that restricted plaintiff on repetitive tasks or prolonged standing, bending, lifting, crawling, sitting and carrying more than ten pounds was changed in March 2004 which then indicated that plaintiff had functional limitations in performing physical labor tasks greater than 20 pounds or repetitive tasks more than one-half hour at a time. (Tr. 119-121) Thus, the restrictions in March 2004 represented an improvement on her ability to lift (from 10 lbs. to 20 lbs.) and repetitive tasks to one-half hour.

Further support for this assessment comes from Dr. Young's records which indicate that plaintiff could perform light work in September, 2004 with a twenty pound weight restriction. (Tr. 160) Dr. Young also noted that plaintiff exhibited over-response and symptom magnification. (Tr. 297) Similarly, Dr. Balderman noted in his notes that plaintiff could lift and carry up to twenty pounds. (Tr. 197)

The ALJ properly gave little weight to Dr. Gosy's August, 2006 assessment that plaintiff was restricted to performing less than sedentary work because it was not supported by and inconsistent with the objective medical evidence in the record. (Tr. 27, 299) Dr. Gosy's own clinical findings throughout 2005 and 2006 reflect that plaintiff had a normal gait, full forward flexion of the spine,

negative straight leg raising bilaterally, full motor strength in the lower extremities, normal range of motion in the knees, and that sensation was intact and deep tendon reflexes were symmetric. (Tr. 303, 305, 307, 309-310, 314, 316, 318, 320) This evidence combined with the opinions from Drs. Lee, Calarusso, Young and Balderman support the ALJ's conclusion that plaintiff could perform at least light exertional work.

In addition to the medical evidence, the ALJ also considered plaintiff's statements regarding her daily activities. Johnson could take care of her own personal needs, attend doctors visits, cook, drive, and do light grocery shopping and light housekeeping. (Tr. 91, 92, 93, 158, 159, 195, 339, 349)

Plaintiff claims the ALJ erred when discrediting plaintiff's credibility without proper consideration of her 23 year work history. While a plaintiff with a good work history is entitled to substantial credibility when claiming they are no longer able to work, the medical record must still support a finding of claimant's disability. In short, a good work history might show a strong financial motivation to work, it cannot be a substitute for evidence of a medically supported disability. See Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (In evaluating the claimant's alleged disability, the Secretary must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . work experience"); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983); Parker v. Harris,

626 F.2d 225, 231 (2d Cir. 1980); Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983). The two cases cited by plaintiff are not persuasive. In Patterson v. Chater, 978 F.Supp. 514, 519 (S.D.N.Y. 1997), the Court found not only that plaintiff was entitled to substantial credibility based on her former work record but also that the Commissioner did not prove that plaintiff was able to perform the former clerical work the ALJ determined plaintiff could still perform. Similarly in Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) the Court relied on the objective medical facts, the diagnoses and expert opinions of the treating and examining physicians, the subjective evidence of pain as testified to by the plaintiff as corroborated by his wife and friend, in addition to the plaintiff's long work record to support the conclusion that the plaintiff was unable to return to his prior work.

Finally, plaintiff contends that the ALJ cannot require objective medical findings that are not present in fibromyalgia to reject the claim based on this illness. In fact, the ALJ did accept the claim of fibromyalgia as one of plaintiff's severe impairments. However, the ALJ considered plaintiff's symptoms as well as the medical records in assessing her testimony and credibility and found that her condition did not render her completely unable to work.

Because I find that the ALJ properly relied on the medical records and testimony in making her determination of plaintiff's residual functional capacity to be one to two step tasks at light exertional level of work, there was no need for a vocational expert

in this case as the Medical Vocational Guidelines provide the framework for decision-making.

### **CONCLUSION**

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         October 23, 2009